GREEN ERSKINE, Appellant, *v.* CHARLES H. PECK, Respondent.

#### February 13, 1883.

CORPORATIONS — STOCKHOLDERS.— One who surrenders to a corporation stock issued to him as "full paid" but for which he has paid nothing, and which stock the corporation issues, for value, to *bona fide* subscribers, is not liable as a stockholder to one who becomes a creditor of the corporation long subsequent to such surrender.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed.*

HAYDEN & GLOVER, with whom are KLEIN & FISSE, for the appellant.

CHESTER H. KRUM and JOHN A. HARRISON, for the respondent.

The defendant, who was one of five purchasers of the franchises of a corporation, received certain shares of the stock of the corporation, which were issued to him as "full paid" stock, but for which he had paid nothing. He afterwards surrendered this stock to the corporation, and the shares thus surrendered were issued by the corporation, for value, to *bona fide* subscribers. A year after the defendant's surrender of the stock, the plaintiff became a creditor of the corporation. Having obtained judgment against the corporation, he now seeks, by this motion, to render the defendant liable to him on this surrendered stock.

LEWIS, P. J., delivered the opinion of the court.

This is a motion by a judgment creditor of the Gravois Railroad Company, for execution against the defendant as a stockholder in the corporation. The facts touching the defendant's relations with the company are the same with those in the case of *E. C. Smith, Assignee, etc.,* v. *C. H. Peck,* wherein the opinion of this court is filed simultaneously with this. The two causes were tried together in the circuit court, and all the evidence introduced was considered as applicable to both cases. In the present case, the entry of judgment recites that, "the court having awarded execution against said Charles H. Peck for $2,500, doth order that the motion for execution herein be overruled." It is apparent from this recital that the court found, as matter of fact, that the defendant had effectually surrendered to the company two hundred and fifty of the three hundred shares held by him in 1873; so that, when these executions were issued, he owned no more stock than was made the basis of his liability on the motion for execu-

tion in the Smith case. The question raised by this appeal is, whether the defendant's alleged surrender and transfer of stock to the corporation was valid and effectual to shield him from responsibility upon the plaintiff's claim, to the extent of the stock so surrendered?

Much of the argument for the plaintiff appears to be based upon an idea that, when the defendant became one of the five corporators, by their joint purchase of the franchise, he thereby became the holder of one-fifth part of the authorized capital stock of the corporation. Such an idea has no foundation whatever. If each of five corporators were the individual holder of one-fifth of the capital stock, there would be none left for the corporation to issue to subscribers and purchasers. If a purchase of the franchise involves a purchase of the stock, then the stock, so acquired for valuable consideration, must necessarily be "paid-up stock," and therefore not a subject for any personal responsibility in the holder.

Such a view would give entire sanction to the proposition which some of the directors of this company appear to have entertained, that they "had a right" to issue certificates of stock to themselves, without paying or intending to pay anything for it, and afterwards to sell and transfer the same, on individual account, to third parties, as "paid-up stock." The corporators, as such, holding only the franchise, own no stock. The stock is in embryo. The corporators may bring it into life and form, by issuing certificates, or other evidences of the investment, to such persons as may properly contribute to the fund, which is thenceforth to be known as the "capital stock," to furnish material for the operations of the company, and to be preserved in trust for the benefit of its creditors.

We have carefully examined all the authorities here cited for the plaintiff, and find in them no parallel with the present case, to the effect that the defendant's transfer of his stock to the corporation was void. The fundamental truths,

that the capital stock is a fund held in trust by the corpora_ tion for the security of its creditors ; that stock subscribed and not paid for is, in the hands of the debter stockholder, only so much of the same fund encumbered with the same trust, which may be enforced against him personally ; and that neither corporation nor stockholder can lawfully do any act which will impair or diminish the trust-fund to the prejudice or peril of its beneficiaries, find expression in various forms in the cases referred to. They show that the corporation cannot release such a stockholder from the obligation implied in his subscription, by reason of an understanding had with its agents, at the time when he subscribed ; that an agreement, whereby a note given for the purpose of swelling the apparent aggregate of stock taken, is to be reduced in amount after the object is accomplished, will be held a fraud on the law, and void ; that no device will be tolerated, whereby the obligation of the stockholder may be transformed into an indebtedness as upon a loan of money ; that a stockholder cannot withdraw his subscription and refuse to pay, on the ground that it was obtained by fraud and misrepresentation of the agent of the company ; that the directors cannot indorse a gratuitous credit on a note given by one of their number, which constitutes a part of the capital fund ; and that a resolution, formally adopted, to make no more calls on the stock subscribed, cannot be carried into effect against the creditors of the corporation. *Reciprocity Bank Case,* 22 N. Y. 9 ; *Upton* v. *Tribilcock,* 91 U. S. 48 ; *Bedford R. Co.* v. *Bowser,* 48 Pa. St. 30 ; *Tuckerman* v. *Brown,* 33 N. Y. 297 ; *Brouwer* v. *Appleby,* 1 Sandf. 158 ; *Brouwer* v. *Hill,* 1 Sandf. 629 ; *Sawyer* v. *Hoag,* 17 Wall. 610 ; *Ogilvie* v. *Knox Ins. Co.,* 22 How. (U. S.) 380; *Alford* v. *Miller,* 32 Conn. 543 ; *Sagory* v. *Dubois,* 3 Sandf. Ch. 466. But none of these authorities, or any others that we have seen, go to the extent which the plaintiff's position here demands. It could not have been intended or supposed in

this case, by either the officers of the corporation or the defendant, that a surrender of the stock would in any wise diminish the assets of the company, or the security of its creditors; for the testimony all shows that both parties at least believed the stock to be paid up, and so treated it throughout. On the contrary, the negotiations between the attorney and the defendant, with the ultimate concessions on both sides, or the so-called "compromise," all go to show a common understanding and intention, that the transfer to the corporation, by the defendant, would create a very important addition to its material assets. Nothing was paid out by the corporation. It does not even appear that there was any formal surrender of whatever claim or title the corporation might have to the bonds retained by the defendant. That the corporation, its capital stock, or the security of its creditors, suffered no real impairment or diminution by the transaction is evident in the fact that the same shares were afterwards issued by the company, presumably for value received, to new purchasers or subscribers. It appears from the record that the plaintiff's claim against the corporation arose about a year after the surrender in question, and his judgment was three years later than the same event. There was, then, neither in the purposes entertained, nor in the practical accomplishment, anything "given away" by the directors, any deliberate breach of their duty as trustees, or any impairment of the fund to which the plaintiff, in afterwards becoming a creditor, might look for his ultimate security. A person, competent to own and dispose of personal property, transfers to a party competent to acquire and hold as owner, all his interest in a commodity universally recognized as personalty, having a transferable quality; and this, without a shade of interference with the rights or reasonable expectations of any third party. If a transfer, so circumstanced, is null, it must be because the relation, once established, between stockholder and corporation, is, like the marriage

bond, wholly unalterable by mutual agreement of the parties, during their joint lives ; or, because a corporation is incapable of acquiring or holding its own stock on any terms, after the shares have once been possessed by another. If such be the law, a corporation cannot save itself and its creditors from loss, by reacquiring shares from an insolvent person who cannot pay for them, and selling them to one who can ; nor can there be any more forfeitures of stock to corporations, for non-payment of assessments, or other dues. We do not think that the law so stands.

There is no claim of any surplus liability remaining in the defendant, above the amount of the Smith judgment, since it is agreed by counsel, and attested by their stipulation filed in that case, that the court in fact found the defendant to be the holder of only fifty shares, instead of one hundred, and that the clerical entry is erroneous. The judgment is affirmed. Judge THOMPSON concurs ; Judge BAKEWELL, having been of counsel, does not sit.