HERSCHEL WHITAKER, RECEIVER, v. STEPHEN B. GRUM-
MOND.

*Corporations—Stock subscription—Compromise—Exchange of stock.*

1. Corporate authorities, and generally the directors, have power to compromise any corporate debt, and if, in the collection of subscriptions, there is any doubt as to the liability of a subscriber, the corporation may compromise the liability, and release a part for the purpose of securing the residue.
2. A compromise made in good faith by the directors of a corporation with a stockholder, by which he is released from one-half of his subscription on payment of the residue, while subject to the rights of creditors, is binding upon the stockholders of a new corporation organized by those of the one first named, who exchanged their stock for an equal amount of that of the new company, said subscriber making his subscription on the basis of said compromise, of which fact the other stockholders had full notice.

Error to Wayne. (Speed, J.) Argued January 6, 1888. Decided January 19, 1888.

Assumpsit for balance alleged to be due on stock subscrip-

tion. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*H. C. Wisner,* for appellant.

*Moore & Canfield,* for defendant.

Long, J. On the twenty-third day of October, 1883, the Clarke & Granger Manufacturing Company was organized as a corporation under Act No. 187, Laws of 1875, and in the month of November, 1883, the defendant, with others, signed a subscription for stock in said corporation, of which the following is a copy:

"DETROIT, MICH., November ——, 1883.

" We, the undersigned, hereby subscribe our names for stock in 'The Clarke & Granger Manufacturing Company,' of Detroit, Michigan, to the amount below specified, at 50 per cent. of its par value, payable as follows: Ten per cent. of said amount to be paid down when the amount of $37,500 is entirely subscribed; the second installment of fifteen per cent. to be paid when the building contract is let; and the third installment of twenty-five per cent. to be paid when the tools of trade are contracted for; and the balance (fifty per cent.) to be paid when the works are ready for operation."

There were 62 signers to this subscription to stock, the whole amount of the stock subscribed being 3,020 shares, par value of $25 per share, the defendant being a subscriber for 200 shares.

The buildings referred to in said subscription were constructed, the tools of trade purchased, and the works of the company gotten ready for operation, and were in full operation on July 1, 1884.

From the date of said subscription until about August 1, 1884, said defendant acted as a stockholder in said company as the representative of 200 shares of its stock, and at the stockholders' meeting voted on the basis. of being the subscriber of 200 shares. The defendant was first called upon to pay 10 per cent. of his subscription, and paid the same,

being $250, and also paid thereafter 15 per cent. of said subscription, being $375.

On August 21, 1884, the secretary of the company called upon defendant for the payment of the balance of his subscription of $1,875. Defendant refused to pay the same, claiming that he was only to take 100 shares, and that that was the understanding when he subscribed for the 200 shares; that he was ready and willing to pay the balance of the 50 per cent. upon the 100 shares, of $625. The secretary of the company reported defendant's proposition to the board of directors, who directed the secretary to make a settlement with defendant on that basis. The board of directors consisted of five members at that time; Mr. Moran, Mr. Clarke, Mr. Granger, and the secretary, all agreeing to accept defendant's proposition. Mr. Dunneback, the secretary, and one of the directors, then made such settlement with defendant, issued to him a paid certificate for 100 shares of stock, and received from defendant $625, balance due thereon at 50 per cent. of its par value, in accordance with such subscription. On October 10, 1884, at a special meeting of the stockholders, the following resolution was passed:

"*Resolved*, That whereas, difficulties have arisen in relation to the raising of the necessary means to carry out the objects of this corporation, it is advisable that a new company should be organized, based upon the property of this company, for this purpose, and to which the stockholders present agree, upon the following basis:

"1. That a new corporation be formed, to be called 'The Granger Engine Works,' with a capital of one hundred and fifty thousand dollars.

"2. That there be issued to the following-named persons stock in such company as follows, which shall represent all their stock in the new company, viz.: Harry W. Granger, 450 shares; Joseph F. Dunneback, 250 shares; Charles T. Moran, 250 shares; John S. Clarke, 250 shares.

"3. That there be issued to all other stockholders of this company, who have paid in full therefor, the same number of shares they now have.

"4. That there be issued to such stockholders as have not paid for their shares the same number of shares they subscribed in this company, upon payment of the balance due thereon."

The following resolution was adopted at a meeting held on the twenty-eighth of October:

"*Resolved*, That all the property, real and personal, and effects of this company, be sold to The Granger Engine Works for the sum of one dollar, and the assuming by that company of all the liabilities of this company, and that the president, or the vice-president and the secretary, make the necessary conveyance and transfer to The Granger Engine Works therefor."

The Granger Engine Works was duly organized as a corporation under Act No. 187, Laws of 1875, and amendments thereto, on the sixteenth day of October, 1884, and the defendant, with others, signed a subscription for stock in said corporation, of which the following is a copy:

"The undersigned, for and in consideration of one dollar to each of us paid by The Granger Engine Works, and in consideration of the exchange of our stock in the Clarke & Granger Manufacturing Company for stock in The Granger Engine Works, do hereby subscribe for the number of shares in The Granger Engine Works set opposite the names of each hereto, and, where the same is not already paid for in full, do each hereby agree to pay The Granger Engine Works the amount unpaid *thereon*, as *stated hereon*, within thirty days from this date, and hereby waive any call for the same as an assessment therefor.

"*Detroit, October 23, 1884.*"

Nearly all of the subscribers to the capital stock of the Clarke & Granger Manufacturing Company under this agreement became subscribers to the capital stock of the Granger Engine Works. The defendant subscribed upon such agreement for 100 shares of such capital stock, and set opposite his name thereon appears the following in the column of shares, "100 only;" and in the column "Paid" appears, "1,250, Oct. 27, '84." A bill of sale and contract was then made as follows:

"This bill of sale and agreement, entered into this eleventh day of November, A. D. 1884, between the Clarke & Granger Manufacturing Company of Detroit, Michigan, of the first part, and the Granger Engine Works of the same place, of second part.

"The party of the first part, in consideration of a resolution adopted by its stockholders at a meeting thereof, held on the twenty-third day of October, A. D. 1884, and of one dollar to it paid by the party of the second part, and its agreement hereunder to pay all the debts and liabilities of the party of the first part, doth hereby transfer, sell, and deliver to the party of the second part all of its property, real and personal, and effects of every name and nature, to have and to hold the same unto the party of the second part and its assigns, forever.

"And the party of the second part doth hereby, in pursuance of a resolution of its stockholders at a meeting thereof, on the twenty-third day of October, A. D. 1884, purchase all the property, real and personal, and effects of the Clarke & Granger Manufacturing Company as above conveyed by it, and the party of the second part doth hereby assume and promise to pay to the holders thereof all the debts and liabilities of the said party of the first part.

"In witness whereof the said parties have hereto set their respective corporate seals the day and year first mentioned.

"THE CLARKE & GRANGER MFG. CO.,
"By Alfred Chesebrough, President.
"J: F. Dunneback, Secretary.
"THE GRANGER ENGINE WORKS,
"William McKay, President.
"J. F Dunneback, Secretary.
"In presence of D. C. HOLBROOK.
"THOMAS HISLOP."

The Granger Engine Works Company took possession of such property, and continued business up to December 9, 1885, when, at a meeting of its board of directors, the following resolution was adopted by such board:

"WHEREAS, The stock, property, and effects of The Granger Engine Works have been so far reduced, by losses and otherwise, that it will not be able to pay all just demands to which it may be liable, or afford a reasonable security to those who may deal with it:

"*Resolved*, That proceedings be at once instituted to dissolve said corporation, and wind up its affairs, in accordance with law."

Such proceedings were afterwards had in the superior court of Detroit, in chancery, that on the third day of April, 1886, a decree was made and entered dissolving such corporation, and appointing Herschel Whitaker (plaintiff herein) receiver of its property and effects.

The declaration is in assumpsit, and contains three counts. If the plaintiff has a right to recover, it must be under the first count, in which it is claimed that the defendant became a subscriber to 200 shares of the capital stock of the Clarke & Granger Manufacturing Company, at 50 per cent. of its par value, according to the terms of the subscription paper hereinbefore set forth; and that although the defendant, in part performance of his said promise and undertaking did pay to said corporation the sum of $1,250, yet he, not regarding his said promises, hath not paid the balance of the sum so promised by him, amounting to $1,250.

That the Clarke & Granger Manufacturing Company sold, assigned, and transferred its claim thereto, and the right of action therefor, to the Granger Engine Works, a corporation organized and existing under the act aforesaid, of which sale, assignment, and transfer the defendant had notice, and thereby the defendant became indebted in said amount to said The Granger Engine Works, etc.

To this declaration the defendant pleaded the general issue. At the close of the trial the court directed a verdict for the defendant, and plaintiff brings error.

Plaintiff claims to recover the value of the 100 shares subscribed by the defendant to the Clarke & Granger Manufacturing Company, and insists that such subscription was a debt due from the defendant to the Clarke & Granger Manufacturing Company, and, as such, passed under the bill of sale to the Granger Engine Works, and, as receiver of such

corporation, he can maintain this action; that the Clarke &
Granger Manufacturing Company, by its board of directors,
had no right to compromise with defendant for the value
of the 100 shares; and that their action thereon was illegal
and void, for the following reasons:

1. That the board of directors had no authority to make
such compromise.

2. That it was not founded upon any sufficient considera-
tion to support it.

3. That it was a fraud upon the rights of the other sub-
scribers.

Whether this subscription to the capital of the Clarke &
Granger Manufacturing Company was such a debt as passed
to the Granger Engine Works under the bill of sale is very
questionable. *Wells v. Rogers,* 50 Mich. 294 (15 N. W. Rep.
462); Id., 44 Id. 411 (6 N. W. Rep. 860). As we view the
case made by this record, however, we need not pass upon
that question, and we express no opinion thereon.

We therefore pass to the principal question involved, and
which is decisive of the controversy. Was the defendant
released upon his subscription to the 100 shares, for the
value of which this suit is brought, by the action taken by
the directors and the proceedings of the stockholders at their
meeting held on the tenth day of October, 1884? It appears
that a dispute had arisen between the directors of the com-
pany and the defendant as to the conditions upon which the
defendant signed the subscription paper for 200 shares of the
capital stock of the Clarke & Granger Manufacturing Com-
pany. When called upon to pay his subscription by the
secretary of the company he refused to pay for the 200
shares, but offered to pay in full for 100 shares, upon condi-
tion that he might be released from the payment of the
other 100. This was reported by the secretary to five of the
directors, and the secretary was then directed by them to
make the arrangement. This the secretary did, and the

defendant then paid $625, the balance due upon the 100 shares. On the tenth day of October following this arrangement, at a meeting of the stockholders, the resolution was passed as set out in the statement of this case, in the third clause of which appears the following:

"That there be issued to all other stockholders of this company, who have paid in full therefor, the same number of shares they now have."

And the fourth clause provides—

"That there be issued to such stockholders as have not paid for their shares the same number of shares they subscribed in this company, upon payment of the balance due thereon."

Examining, now, the subscription paper of the Granger Engine Works, we find the language used,—

"And, where the same is not already paid for in full, do each hereby agree to pay The Granger Engine Works the. amount unpaid *thereon,* as stated *hereon.*"

This subscription paper provided for an exchange of the stock of the Clarke & Granger Manufacturing Company for an equal amount of stock of the Granger Engine Works, and we find the defendant's subscription to this latter stock was for 100 shares, and marked upon such paper as paid in full. It cannot, therefore, be doubted that the stockholders of the Granger Engine Works were advised of the settlement made by the directors of the old company with the defendant, and acted upon it, and took his subscription for 100 shares only of their capital stock.

Corporate authorities, and generally the directors, have power to compromise any corporate debt, and if, in the collection of subscriptions, there is any doubt as to the liability of the subscriber, the corporation may compromise the liability, and release a part for the purpose of securing the residue. Cook, Stock, § 171. Here was a compromise made in good faith, acted upon by the stockholders in the formation of the

new company. While it could not take away any right which creditors had acquired, yet it must be held binding upon the stockholders of the new company.

The receiver of the new company, the plaintiff in this case, does not represent the stockholders of the old company, and he does not represent the creditors of the old company, if it has any. No stockholder or creditor of the old company makes complaint of this settlement, so far as this record discloses.

We think from the circumstances disclosed by this record that the settlement by the directors of the old company with the defendant has been acquiesced in by the whole number of stockholders of the new company, and that they are now estopped from attacking it. *Bath's Case,* 8 Ch. Div. 334; *Lord Belhaven's Case,* 3 De Gex, J. & S. 54.

This disposes of the case, and we think the court properly directed a verdict for defendant.

The judgment is affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred. CAMPBELL, J., did not sit.