[Sac. No. 616.   Department Two.—December 20, 1900.]

## TULARE SAVINGS BANK et al., Respondents, v. A. P. TALBOT et al., Appellants.

INSOLVENT CORPORATION—ACTION BY CREDITORS—UNPAID STOCK—RELIEF WITHIN ISSUES—OWNERSHIP OF STOCK—SUBSCRIPTION IMMATERIAL.—In an action by judgment creditors of an insolvent corporation to compel payment of unpaid shares of stock, where the averments of the complaint are broad enough upon issue joined, and the proofs are sufficient to warrant a recovery against the defendants as *bona fide* holders of unpaid stock, it is immaterial whether they are shown to be original subscribers or not.

ID.—OVERISSUE NOT SHOWN—APPARENT OVERSUBSCRIPTION—STOCK SUBSCRIBED BY PROMOTER—DEDUCTION—AGENCY.—Where it appears that there was no overissue in fact of any shares of the corporation, but that there was an apparent oversubscription upon the aggregate subscription lists, due to the fact that the promoter of the corporation subscribed a sufficient number of shares to make the entire subscription complete, as an assumed agent for stockholders thereafter subscribing or taking shares of stock, whose subscriptions or shares taken were deducted from his in the original issuance of the stock, with the acquiescence of all parties concerned, and without any intended fraud, the promoter must be deemed the agent of such subsequent subscribers or shareholders and the stock received by them cannot be deemed an overissue.

ID.—RELEASE OF SUBSCRIBING STOCKHOLDER—ACQUIESCENCE.—Though a contract of subscription to the stock of a corporation may be modified or annulled only by the unanimous consent of the stockholders, or by the board of directors duly authorized to release it, yet such release may be proved not only by the records, but as well by the acquiescence of the stockholders, and by the fact that the corporation itself did not regard it as binding.

ID.—SUBSTITUTION OF STOCKHOLDERS—ASSIGNMENT.—No formal assignment is necessary in order to substitute one stockholder for another.

ID.—PAR VALUE OF SHARES—AGREEMENT UPON STUB CERTIFICATE—CONSTRUCTION—FINDING—RELIEF OF CORPORATION—PURCHASE BELOW PAR NOT AUTHORIZED.—Where the par value of the shares was two hundred dollars each, and defendants claimed that they had paid their stock in full by paying in addition to their first payment of twenty dollars per share, the full sum of thirty-four dollars per share, under an agreement signed upon each stub certificate by all of the shareholders when the stock was is-

sued to pay one dollar per share each month for thirty-four months, such agreement, in the absence of proof of authority from the directors to sell the stock at less than par, must be construed, in accordance with the finding of the court, to be not a contract of purchase, but an agreement merely to relieve the corporation from the necessity of making calls and assessments upon the stock.

APPEAL from a judgment of the Superior Court of Tulare County. Wheaton A. Gray, Judge.

The facts are stated in the opinion of the court.

William H. Jordan, for Appellants A. P. Talbot and George A. Pope.

E. T. Cosper, for Appellant P. B. Fagan.

C. L. Russel, and W. B. Wallace, for Respondents Tulare Savings Bank, Linder Hardware Company, and D. E. Stone.

Richards & Carrier, for Respondents S. Herbert Howe and H. P. Lincoln, Executors, etc.

E. T. Cosper, for Respondents Mowry & Eaton.

Oliver Ellsworth, for Respondent William G. Wainwright.

Hendrickson & Tam, for Respondents F. H. Keyes and William Hendrickson, Jr.

G. W. Zartman, and Davis & Allen, for Respondents T. C. Caruthers and W. W. Collins.

George H. Maxwell, and R. M. F. Soto, for Respondent W. L. Culver, Administrator, etc.

W. S. Raynor, Respondent *in pro. per.*

HENSHAW, J.—This action was brought by plaintiffs and intervenors, judgment creditors of the Packwood Vineyard and Fruit Company, an insolvent corporation, to compel payment by the stockholders of that corporation of the unpaid portion of their stock. The defendants Pope, Talbot, and Fagan appeal from the judgment given against them, and in support

of their appeal Talbot and Pope urge that they were not original subscribers to the stock of the corporation, that they purchased their stock from the corporation under written contract and at the agreed price of fifty-six dollars per share, which they had fully paid, and that this purchase was made with the full knowledge of most of the plaintiffs and intervenors, who after that knowledge gave credit to the corporation. They contend still further that plaintiffs and intervenors, having elected to treat them as original subscribers, must be refused any relief in this action upon a showing that they were not such; and finally, they insist that the stock which they purchased was an illegal and void overissue wherefor they are not liable.

The position of the appellant Fagan differs from that of Pope and Talbot only in this: he admits that he was an original subscriber to shares of stock of the corporation to be formed, but asserts that the full five hundred shares of the stock of the corporation was taken before the amount for which he had subscribed was issued to him, and therefore, his stock was an overissue and void.

R. Linder was the owner of a tract of land in Tulare county. He conceived the idea of forming a corporation and selling to it his land, which was to be planted with trees and vines. In furtherance of his idea he sought subscriptions to the capital stock of the prospective corporation. This capital stock was to be divided into five hundred shares of the par value of two hundred dollars per share. Several subscription papers were circulated, and to them signatures obtained. The corporation was then organized, and in the articles of incorporation the names of Pope and Talbot were inserted for twenty shares each, and Linder was put down as the owner of one hundred and eighty-three shares. Pope's and Talbot's names likewise appeared upon one of the subscription papers. Much discussion is devoted to the question whether or not the names of Pope and Talbot were thus placed upon the subscription list and in the articles of incorporation by their authority; but we think, in the light of what was actually done, the determination of this question becomes immaterial. For it is unquestionably true that Pope and Talbot and Fagan took the stock of the corporation, paid value for it, and acted in all respects as stock-

holders before and during the time the debts of the corporation to plaintiffs and intervenors came into existence. If, then, these appellants were *bona fide* stockholders and holders of *bona fide* stock, it would be immaterial whether they be considered as original subscribers or not. Under section 580 of the Code of Civil Procedure plaintiffs were entitled to any relief consistent with the case made by the complaint and embraced within the issues. The averments in the complaint are broad enough to justify a recovery against the defendants as holders of the stock, whether they be original subscribers thereto or not.

The contention that the stock of these appellants was an over-issue, and therefore void, is based rather upon figures than upon facts, for in truth there was never issued by the corporation a single share more than the five hundred authorized by its articles of incorporation. The argument of appellants here is that the aggregate subscription lists showed more than five hundred shares; that Linder, in the articles of incorporation, was down for one hundred and eighty-three shares; that the subscribers and incorporators acquired rights to this stock of which they could not be deprived without their consent, and without the unanimous consent of the stockholders, and that, casting up the totals of the subscription lists and the amounts set down in the articles of incorporation, the result is a sum far exceeding five hundred shares. The facts appear to be that at the time the articles of incorporation were drawn all the subscription lists were not at hand, and that Linder, the organizer and promoter of the corporation, put his name down for one hundred and eighty-three shares to make up the full total of five hundred. In so doing he constituted and regarded himself as the self-appointed agent of other subscribers whose names were not at hand, and the fact is that no subscriber was refused the amount of stock which he demanded, but such stock was issued to him directly by the corporation, it being taken in some instances from the amount of Linder's one hundred and eighty-three shares. In this there was complete acquiescence upon the part of Linder and the other stockholders. While it is true that a contract of subscription may be modified or annulled only by the unanimous consent of the stockholders, or by the board of directors duly authorized thereto

(*Pacific Fruit Co. v. Coon*, 107 Cal. 452), such release may be proved not only by the records, but as well by the acquiescence of the stockholders of the corporation, and by the fact that the corporation itself did not regard it as binding (*Stuart v. Valley R. R. Co.*, 32 Gratt. 146; Cook on Stock and Stockholders, sec. 169); nor is any formal assignment necessary to substitute one stockholder for another. (*Weinman v. Wilkinsburg Ry. Co.*, 118 Pa. St. 192.) There is not the slightest suggestion that Linder was acting or attempting to act in fraud of the rights of anyone. Before the organization of the corporation, Pope and Talbot had agreed to take stock in it. The amount had not been definitely decided upon. The stock subsequently taken by Pope and Talbot concluded the agreement, and in this subscription for one hundred and eighty-three shares Linder may be regarded as having acted as their agent, as well as the agent of others to whom the stock was afterward issued. (*San Joaquin etc. Co. v. Beecher*, 101 Cal. 79; *Burr v. Wilcox*, 22 N. Y. 551; *Terwilliger v. Great Western Tel. Co.*, 59 Ill. 249; *Bates v. Great Western Tel. Co.*, 134 Ill. 536.)

Coming to consider the further contention of appellants that Pope and Talbot were not original subscribers to the stock, but purchased directly from the corporation at an agreed price of fifty-six dollars per share, evidenced by a written contract with the corporation, and that Fagan, though an original subscriber, stands in the same position in this regard as do Pope and Talbot, by reason of the fact that his contract of original subscription was waived by the corporation, which entered into a contract identical in its terms with that of Pope and Talbot, the facts bearing upon this contention are the following: At the time of the issuance of the stock Pope, Talbot, Fagan, and all the other stockholders as well, signed upon the stub of the certificate-book of the corporation a receipt for their stock, acknowledging that it was taken subject to the provisions and conditions of the by-laws, and continuing: "I hereby agree and contract to pay to the corporation on the fifteenth day of February next the sum of one dollar per share of said stock, and thereafter a like sum on the fifteenth day of each and every month for thirty-four months." It is insisted by appellants that this was their contract, and their only con-

tract, with the corporation; that they were to pay and did pay originally twenty dollars per share for their stock, and that the thirty-four monthly payments of one dollar for each share was the total amount of the purchase price. It would unduly prolong this discussion to detail at length the evidence supporting the conclusion of the trial court that this receipt and agreement was not a contract of purchase between the corporation and the stockholders. It was merely an agreement, not unusual with such corporations, by which the stockholder stipulated to pay to the corporation a certain monthly amount to defray the operating expenses until such time as it was estimated it would be self-supporting. It was designed to relieve, and was a convenient method of relieving, the corporation from the necessity of making calls and assessments upon the stock. (*West v. Crawford,* 80 Cal. 19; *Kohler v. Agassiz,* 99 Cal. 14; *Upton v. Tribilcock,* 91 U. S. 45.) Moreover, no authority on the part of the directors of the corporation to sell the stock for less than par is anywhere shown, and, if it should be conceded that the contract in question is ambiguous, in the absence of evidence of authority it would not be presumed that the construction contended for by the appellants was the true one.

As the contract in question, therefore, is not to be construed as a contract of purchase between the corporation and the stockholder, it becomes unnecessary to consider whether the plaintiffs and intervenors were charged with knowledge of its character.

We can perceive no just ground for complaint that the findings are erroneous and conflicting. As has been said, even conceding that Pope and Talbot are not original subscribers, they were still owners and holders of the stock under circumstances entitling these plaintiffs and intervenors to the relief prayed for.

The judgment appealed from is affirmed.

McFarland, J., and Temple, J., concurred.

Hearing in Bank denied.