# CHARLESTON.

## SWING, TRUSTEE, v. TAYLOR & CRATE.

Submitted March 31, 1909.   Decided February 7, 1911.

1. INSURANCE—*Fire Insurance Companies—Doing Business in the State.*

   A fire insurance company, having its principal office in the state which created it, does not violate the laws of another state forbidding foreign corporations to do business therein, except upon certain conditions, by insuring property in such other state before compliance with those conditions, if application for the insurance is made to the company at its home office, and the policy is issued therefrom.   It is not thereby doing business in the state in which the property insured is located.

2. SAME—*Mutual Assessment Insurance—Liability of Policy Holder.*

   The liability of policy holders in a mutual assessment insurance company depends upon the law of the state creating the corporation.

3. LIMITATION OF ACTIONS—*Accrual of Action—Existence of Conditions—Mutual Assessment Insurance—Liability of Policy Holder.*

   Such Liability is contingent, and the statute of limitations does not operate in favor of a policy holder until his liabilty is made absolute, either by corporate action, or by judicial determination.

4. CORPORATIONS—*Judgment—Effect as Against Member of Mutual Assessment Insurance Company.*

   In the absence of fraud, policy holders in such a corporation are bound by a decree against the corporation ascertaining its liabilities, and assessing the policy holders to pay the same. Such decree is not open to collateral attack.

5. SAME—*Liability—Assumption of Debt.*

   A sale and transfer of property by the members of a partnership to a corporation composed of stockholders, some of

whom were members of the partnership and others not, does not import an assumption by the corporation of the debts of the partnership.

Error to Circuit Court, Kanawha County.

Action by James B. Swing, trustee, against Taylor & Crate, a corporation. Judgment for defendant and plaintiff brings error.

*Affirmed.*

*Lorenzo D. Vickers* and *Patterson A. Reece,* for plaintiff in error.

*Price, Smith, Spilman & Clay,* for defendant in error.

WILLIAMS, PRESIDENT:

Plaintiff obtained a writ of error to a judgment of the circuit court of Kanawha county rendered in favor of the defendant in an action brought to recover unpaid assessments decreed against policy holders in the Union Mutual Fire Insurance Company, of Cincinnati, a corporation, by the supreme court of Ohio, on the 11th day of June, 1901, in a *quo warranto* proceeding. By a decree entered in the same cause in 1890, the corporation has been ousted of its franchise, and plaintiff was appointed a trustee for the purpose of winding up its business. On June 11, 1901, a decree was made ascertaining the corporate liabilities, and making assessments upon policy holders. The corporation was a mutual assessment company, organized under the laws of Ohio. It existed but a short time, being organized in 1888, and dissolved in 1890.

Frederick W. Taylor and James Crate, partners in trade, under the name of Taylor & Crate, residing in the City of Buffalo, New York, dealers in lumber and timber, held four policies of insurance in this company insuring property located in Kentucky, Tennessee and Pennsylvania.

The Ohio court by decree pronounced on June 11, 1901, found "that the unpaid liabilities of said company were incurred on and between April 25th, 1889, and Dec. 18th, 1890, and that all persons who held policies of insurance in said Company on their property during the time the unpaid liabilities of said Company were incurred, are liable for their just proportion of said liabilities with interest thereon, together with the expense

of winding up the affairs of said Company, including the expense of litigation with such of them as do not pay this assessment without suit."

The policies held by Taylor & Crate were issued between the dates mentioned in the decree. It appears that the company issued two kinds of policies: one for a year, or less time, known as the "Short Term Participating Policy" upon which the premium was paid in cash; and another for five years for which, in addition to a cash premium, the insured gave a deposit, or premium, note upon which assessments were leviable, not to exceed, in all, the amount of the note. The four policies held by Taylor & Crate, and on account of which this action is brought, were of the former class, all being for a year or less time. By the law of Ohio in force when these policies were issued, a policy holder in a mutual company was made a member of such company, and was liable for losses and necessary expenses accruing to the company during the period of his insurance, "in proportion to the original amount of his deposit note, or *contingent liability."* The law of Ohio would, therefore, seem to make both classes of policy holders members of the company during the continuance of their policies. At any rate, the court of Ohio has so construed the law of that state, and its construction must be accepted by this Court. The Ohio court divided that period into seven quarters of three months each, and ascertained the unpaid liabilities of the company for each of said quarters separately. It also ascertained the liability of the policy holders, for each of said quarters, to be a certain per centum of their premium notes and contingent liabilities.

The declaration alleges that the firm of Taylor & Crate were members of the company during the fourth, fifth, sixth, and seventh quarters, and that the total amount of their liability, ascertained in the manner provided by the decree for those quarters, was $494.65. This is the amount for which it brought its action in *assumpsit* against Taylor & Crate, the West Virginia corporation, in the circuit court of Kanawha county. Defendant demurred to the declaration, pleaded the general issue, and also filed two special pleas setting up the statute of limitations, one the five years statute, and the other the ten years statute of limitations. Most of the evidence is documentary. The insurance company was an Ohio corporation and had its

principal office in Cincinnati. Consequently, there is no question concerning the jurisdiction of the Ohio court to make the decree in the *quo warranto* proceeding. The decree is, therefore, binding upon all the policy holders upon the question of their liability to be assessed. It was not necessary that the individual policy holders should be before the court to enable it to determine the liabilities of the corporation, and to decree an assessment upon the policy holders to pay the same. As to this matter they were represented by the corporation itself. The liability of the policy holders depends upon the Ohio law which was construed by the Ohio court in pronouncing its decree. 2 Purdy's Beach Priv. Corp., section 582. The binding force, and the finality of that decree can not be assailed in this Court. They are bound by it. *Sanger* v. *Upton, Assignee,* 91 U. S. 56; *Hawkins* v. *Glenn,* 132 U. S. 319; *Glenn* v. *Liggott,* 135 U. S. 533; *Vanderwerken* v. *Glenn, Trustee,* 85 Va. 9. Of course, we do not mean to say that the decree of the Ohio court has the force of a personal judgment against the firm of Taylor & Crate, who were neither present, nor served with process, but what we do mean to say is, that the decree can not be assailed by any one who was, in fact, a policy holder, on the question of the necessity for, and the amount of, the assessment determined by the court for the purpose of discharging the company's liabilities. The decree would not, of course, estop Taylor & Crate from denying that they were ever members of the company, or that they ever held policies in it, or that the officers fraudulently procured the decree to be made. But the fact is admitted that they were policy holders in the company in the year 1890. They are, therefore, estopped to deny their liability for the assessment, as ascertained by the decree of the Ohio court.

The statute of limitations did not begin to run in favor of Taylor & Crate until the decree was made, assessing the policy holders. Their liability, it is true, existed from the issuance of their policies; but until the date of the decree it was only contingent. An action could not be brought upon such liability. It had to be made certain and absolute, either by corporate action or by judicial ascertainment, before an action would lie. Consequently, the statute of limitations was not set in motion until June 11, 1901, the date of the Ohio decree. Plaintiff's action is, therefore, not barred. A policy holder in a

mutual company occupies a relation to his company somewhat similar to that of a stockholder in a stock-issuing company, on whom there is a liability for unpaid stock subscription. Such stockholders may never be called upon to pay the full amount of his subscription; nevertheless he is bound to pay when a call is made by the corporation. And a call made upon him converts his contingent liability into an absolute one; and until such time the statute of limitations does not run in his favor. The decree of a court winding up the affairs of a corporation, and decreeing the payment by the stockholders of their unpaid subscriptions, for the benefit of creditors, also makes the contingent liability absolute and sets the statute in motion. *Trustees of Broadus Institute* v. *Seirs*, 68 W. Va. 125 (69 S. E. 468) ; *Vanderwerken* v. *Glenn*, 85 Va. 9 ; *Scovill* v. *Thayer*, 105 U. S. 143 ; *Glenn, Trustee*, v. *Sample*, 80 Ala. 159 ; *Lehman* v. *Glenn*, 87 Ala. 619 ; *South Milwaukee* v. *Murphy*, 112 Wis. 614 ; *Glenn, Trustee*, v. *Forte*, 36 Fed. Rep. 824 ; *Swing.* v. *Brister*, 87 Miss. 516 ; *Payson* v. *Brooke*, 19 Fed. Cas. 17.

It is insisted that, inasmuch as the laws of the states of Kentucky, Tennessee and Pennsylvania provide that foreign insurance companies shall not do business in those states, except upon compliance with certain conditions, which the evidence shows that this company had not complied with, this action can not be maintained. We do not think so. The statutes of those states do not say that a contract made by such company which has not complied with the statute shall be void. This question was determined by this Court in the construction of our own statute, ·which is similar  to the statutes of the states above named, in the case of *Toledo Tie & Lumber Co.* v. *Thomas et al.*, 33 W. Va. 566. That case involved a contract to be performed in this state, made with a foreign corporation which had not complied with our statute, and this Court held that, "A contract made by a foreign corporation before it has complied with the statutory prerequisites to the right to do business in another state will not, on that account, be held absolutely void, unless the statute expressly so declares; and if the statute imposes a penalty upon the corporation for failing to comply with such prerequisites, such penalty will be deemed exclusive of any others." We think this is the law, and that it is decisive of the same question raised in this case. To the same effect are

the following authorities: *Swing, Trustee*, v. *Hill*, 165 Ind. 411; 3 Purdy's Beach on Priv. Corp., section 1331.

It is insisted that the liability of the policy holders in this company is only statutory, and, therefore, unenforceable in this state. But notwithstanding the liability depends upon the Ohio statute, it is, nevertheless, a contractual liability which Taylor & Crate voluntarily entered into when they accepted their policies. It is similar in nature to a contract subscribing to the capital stock of an. ordinary stock-issuing corporation. *Flash* v. *Conn*, 109 U. S. 371; *Wyles* v. *Suydam*, 64 N. Y. 173.

But did the company, in fact, violate the laws of Pennsylvania, Kentucky and Tennessee? The testimony of E. H. Williams, secretary of the insurance company, proves that the policies were issued to Taylor & Crate upon applications sent to it, at its home office in Cincinnati, by Rehm & Van Deinse, of Indianapolis, Indiana, who were insurance brokers acting for the insured. Consequently, it appears that the insurance company was not doing business in any of the states named, in violation of their laws. The location of the property insured does not, necessarily, determine the place of doing the business. That is generally determined by the location of the company's principal office, or of the offices of its solicitors or agents. The evidence shows that the company did its business from its home office in Cincinnati with Taylor & Crate through their agents in Indianapolis, Indiana. The contract was, therefore, an Ohio contract, notwithstanding it related to risks on property located in other states. The supreme court of Pennsylvania held, in *Fulton* v. *Accident Ass'n.*, 172 Pa. St. 117, that, "A foreign insurance company does not do business in this state where no person in the state is authorized to accept applications for insurance, receive or collect money thereon, or to receive or collect money on any other account for the said company, but where all applications are sent direct to the foreign office from which all policies are issued." The following cases are also in line with the Pennsylvania decision: *Swing* v. *Brister*, 87 Miss. 516; *Flash* v. *Conn*, 109 U. S. 371; *Railway Co.* v. *Gebhard, Id.* 527; *Seamans* v. *Knap-Stout & Co.*, 89 Wis. 171 (46 Am. St. Rep. 825); *Marden* v. *Hotel Owners' Ins. Co.*, 85 Iowa 584; *Holder* v. *Aultman*, 169 U. S. 81; *Lamb* v. *Bowser*, 7 Bissel (U. S. Cir.) 318; 3 Purdy's Beach on Priv. Corp., section 1339.

This brings us to a consideration of the pivotal question in the case; that is, whether or not there is a legal liability upon the Taylor & Crate Company, a corporation, for the debts of Taylor & Crate, partners, who were the holders of the insurance policies.  It is urged that the corporation was but a re-organization of the pre-existing partnership, by those who composed the partnership, and that the former took over all the assets of the latter for no other consideration than the capital stock issued by the corporation, all of which, it is claimed, was issued to the persons who had composed the partnership; that their interests are the same in the corporation that they were in the firm.  Numerous authorities are cited to support the legal proposition that, in such case, the law raises an implied promise on the part of the new organization to pay the debts of the old.  We have no doubt that, if a corporation were organized by the same persons who had previously formed a partnership, and in which organization no other persons were interested, and all the property of the partnership were transferred to the new organization, the corporation would thereby become liable for the debts of the partnership.  Such was held to be the law in *Andres* v. *Morgan, Trustee,* 62 O. St. 236, and *Reed Bros. Co.* v. *Bank,* 46 Neb. 168.  In such case, the Ohio court said in the opinion rendered in the case above cited: "The members of the partnership may be said to have simply put on a new coat."  The principle would also apply with equal force in case of the re-organization of a corporation, or the merging of two or more distinct corporations into one.  In such cases the courts hold that the transfer of property to the new corporation is not a sale, but is a mere change of name and manner of doing business by the same individuals; and, therefore, their individual liability remains unchanged.  But such is not this case.  The proof does not support plaintiff's contention.  The only evidence offered to prove defendant's assumption of the debts of the partnership is a deed of conveyance for certain lots of ground in the counties of Erie and Amherst, State of New York, to the corporation by the executors and the widow of Frederick W. Taylor, deceased, late member of the firm of Taylor and Crate, and James Crate, surviving member of said firm, and his wife; and the charter issued to the corporation.  The charter bears date, March 16, 1900, and the deed, August 12 of the same year.

SWING *v.* TAYLOR & CRATE. [Feb. 1911.

These documents do not establish plaintiff's contention. The deed recites a cash consideration of $50,000.00; it conveys only land; it does not show that it is all of the land that the firm of Taylor & Crate owned; it does not pass any personal property; nor does it purport to convey all of the partnership assets. It contains no clause binding the corporation to pay the firm debts. The charter recites that the amount of capital stock subscribed, and paid in, is $10,000, and is divided into shares of $100 each; that the one hundred shares are held as follows: James Crate, 48; Horace F. Taylor, 48; Ella F. Crate, 1; Edna F. Crate, 1; Ellen M. Taylor, 1; Shirley G. Taylor, 1. Privilege is given to increase the capital stock to $300,000, by the sale of additional shares. It does not appear that any additional shares were ever sold. These documents, instead of proving that a corporation was formed, consisting only of the members of a pre-existing partnership, for the purpose of taking over all the assets of the firm, and that all the property of the partnership was, in fact thus transferred, for no other consideration than the shares of stock issued by the corporation to the members of the partnership, prove quite the contrary. The only evidence of what consideration was paid by the corporation for the land is the recital in the deed, which is that the company paid $50,000 in cash. Plaintiff supplied this evidence, and he is bound by it. Who furnished the money? There is no evidence that any part of it represented F. W. Taylor's interest in the firm assets. Can we say that the $10,000 capital stock issued to the members of the corporation represents the whole of the $50,000 paid for the land? No, because to do so would be to deny the only evidence offered on the question. Again, it appears that F. W. Taylor died, testate, but it does not appear what disposition he made of his interest in the firm's assets. It does not appear that Horace F. Taylor was his devisee, or that he did not buy, and pay full value for, his forty-eight shares of stock. The same may be said, also, in regard to Edna F. Crate and Shirley G. Taylor, each of whom owns one share. The evidence does not show that any one of the three named stockholders had any interest in the partnership. These documents prove that the corporation was formed of five persons, only one of whom had been a member of the partnership, and that the capital stock of the corporation was only one-fifth the amount of money paid

68 W. Va.

by it to the grantors of the land. Furthermore, it does not appear that there were not still remaining in the hands of the surviving partner Crate, after this conveyance, ample assets belonging to the firm of Taylor & Crate to pay all their debts.

The overruling of the demurrer to the declaration by the lower court does not involve the question last above discussed, for the reason that the declaration not only alleges that defendant corporation had taken over all the property of the firm of Taylor & Crate, for no other consideration than the capital stock of the company, but it also alleges that the corporation assumed the firm debts. The demurrer was, therefore, properly overruled.

We are, therefore, compelled to hold that the charter to the corporation and the deed from Crate and the executors of F. W. Taylor, deceased, to the corporation, prove a sale and not a re-organization by the members of the partnership for the purpose of continuing the business of the firm. There is, therefore, no implied assumption by the corporation to pay the partnership debts.

There is no proof that the corporation ever, at any time, expressly assumed to pay the debts of the partnership, and the judgment of the lower court will be affirmed.

*Affirmed.*