# CHARLESTON.

C. E. MARTIN, TRUSTEE, v. H. S. CUSHWA.

Submitted September 7, 1920.    Decided September 14, 1920.

1. CORPORATIONS—*Subscription Held Continuing Offer Until Revoked Before Acceptance.*

    A subscription for a specific number of shares of the capital stock in a corporation to be formed constitutes a continuing offer binding on the subscriber unless recalled or revoked by him before acceptance unconditionally by the board of directors after organization of the company. (p. 617).

2. SAME—*Postponement of Acceptance not Rejection if Accepted Before Withdrawal.*

    The postponement of such acceptance of a contract of subscription by stockholders or directors after organization, in view of new conditions arising after such subscription, does not amount to a rejection thereof, where subsequently and before withdrawal of the offer by the subscriber such contract is duly and unconditionally accepted by the proper corporate authorities. (p. 617).

3. SAME—*Compromise With Subscriber to Stock for Corporations Benefit is Binding.*

    But if after acceptance of a subscription contract owing to the new conditions arising after the signing thereof, the corporate authorities for a sufficient consideration settle and compromise with the subscriber and the corporation accepts the benefit of such compromise, such compromise will be binding on stockholders and creditors, if done in good faith and for a valid consideration. (p. 617).

4. SAME—*Ratification of Compromise with Subscriber May be by Acts and Corporate Minutes.*

    Ratification of such a compromise with a subscriber to the capital stock of a corporation effected through a committee of directors may be shown by the subsequent acts and conduct of the corporate authorities as well as by some subsequent minute of the board of directors. (p. 618).

86 W. Va.

5.   BANKRUPTCY—*Order of Referee Requiring Subscriber to Pay Balance to Trustee Does Not Prevent Setting up of Subscriber's Defense.*

The order of a referee in bankruptcy upon a rule issued by him against a subscriber to the corporate stock of a corporation adjudged to be a bankrupt, requiring him to pay the balance ascertained to be due to the trustee in bankruptcy, is not conclusive of the rights of such subscriber in an action by the trustee against him to recover the amount claimed on such subscription. In such suit the defendant may interpose any reasonable defense he may have thereto. (p. 620).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, Berkeley County.

Action by C. E. Martin, trustee in bankruptcy of the Norwalk Motor Car Company, against H. S. Cushwa. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*R. W. Snyder, Jr., H. H. Emmert,* and *J. O. Henson,* for plaintiff in error.

*A. C. McIntire* and *S. W. Walker,* for defendant in error.

MILLER, JUDGE:

The contract of subscription to the capital stock of the Norwalk Motor Car Company involved here is the same which we had under consideration in *Martin, Trustee* v. *Rothwell,* 81 W. Va. 681. There we construed the contract and determined upon what showings the plaintiff would be entitled to recover the sums subscribed.

Defendant below was one of the subscribers to the stock of said corporation, and in this action was sued for the balance alleged to be due thereon, and the judgment which he seeks to have reversed, was that he do pay to plaintiff principal $500.00 and interest $341.66, aggregating $841.66, with interest and costs according to law.

While other errors are assigned in the petition, but two propositions are urged for reversal. The first, that the Norwalk Motor Car Company never unconditionally accepted defendant's subscription, and that this omission amounted to a rejection thereof releasing him, without a new proposal duly accepted by

said company.  Second, that there was a new proposal made ·by defendant to subscribe for five shares, which was accepted, and the contract being consummated by the parties by payment thereof in full, and issuance to him by said company of a certificate for said shares, he was released of any obligation to comply with his original offer to take ten shares of said stock.

The first proposition is predicated upon the fact, shown in evidence, that at the first meeting of stockholders, held on September 5, 1911, following the obtaining of the charter on August 21, 1911, there was no acceptance of defendant's proposal contained in his original subscription, but that the meeting was adjourned to the following day in view of the new conditions which had arisen respecting the Ohio corporation whose business and property were to have been taken over by the West Virginia corporation as proposed by the promoters thereof, when it was anticipated a new offer might be necessary or advisable, and a committee was appointed to prepare such new proposal and make report to the adjourned meeting.  This action, it is contended, was a virtual rejection of the original subscription, or a releasing of the subscribers.  But on September 13, 1911, to which day the first meeting was lastly adjourned, it was determined that the original proposal of the promoters, Skadden and his associates, could be complied with, and it was resolved that the original contract be accepted and carried into execution. At this meeting the defendant was present or represented by proxy, which, does not clearly appear.  At all events, Cushwa, though claiming he was not liable on his subscription, refused to pay for the ten shares originally subscribed by him, claiming that the conditions of his subscription had not been complied with, nor his original offer accepted unconditionally.

We have decided that a subscription contract of this character to the capital stock of a proposed corporation constitutes a continuing offer good unless recalled before acceptance unconditionally by the corporation; that after such acceptance it is binding upon the subscriber, as if made to the company after organization.  *Martin, Trustee,* v. *Rothwell, supra, Windsor Hotel Co.* v. *Schenk,* 76 W. Va. 1.

Defendant does not pretend that at any time prior to the

meeting of September 13, 1911, or at any time before acceptance by stockholders and directors he revoked or undertook to revoke his offer. His claim is that by postponing action to September 13, and taking into consideration the probable necessity for a new proposal, the original proposition was rejected. We can not give the action of the stockholders and directors that effect. Indeed we think his meeting and apparently concurring in the action of the stockholders at the meeting on September 13, 1911, concluded him. He thereby, with opportunity beforehand to recall his offer, acquiesced in and ratified the action of the stockholders.

The next question is, was defendant subsequently released by the action of the committee appointed by the directors to settle with stockholders, in accepting his new offer to subscribe and pay for five shares instead of ten? The committee was not specifically authorized to make the compromise. But they admit they undertook to do so. No minute of the stockholders or board of directors was offered showing ratification of the committee's action, but the books of the coporation, corroborative of acquiescence or ratification by the directors, show that defendant's money was accepted and appropriated by the company, a certificate for five shares of stock was issued to him, and a short time after payment in full of the five hundred dollars, he was dropped from the books as a subscriber for ten shares and carried as a holder of five shares only, fully paid. Ratification may be proven in this way. *Stuart* v. *Valley Railroad Co.,* 32 Gratt. 146.

But it is replied by plaintiff's counsel; first, that neither the stockholders nor directors had the power to release defendant, particularly after insolvency of the corporation, of any part of his subscription; second, that defendant is concluded by the judgment of the referee in bankruptcy in the matter of Norwalk Motor Car Company, Bankrupt, pending in the district court of the United States for the Northern District of West Virginia, pronounced on May 15, 1915, ordering defendant and others to pay the balance of their original subscriptions to the plaintiff trustee.

It is conceded that the board of directors, where a corporation is solvent, would have the power as against stockholders and

creditors to settle and compromise a bona fide controversy or dispute of existing claims including a claim for unpaid subscription to capital stock, and for a valuable consideration would have the right to release a subscriber from a claim for unpaid subscription. This proposition seems to be well settled. *Stuart* v. *Valley Railroad Co., supra; Elliott* v. *Ashly,* 104 Va. 716; *New Haven Trust Co.* v. *Nelson,* 73 Conn. 477; 6 Fletcher on Corporations, sec. 4104.

It is quite true, as counsel for plaintiff interpose, that without consideration no board of directors or committee would have the power as against either stockholders or creditors to release a stockholder from the obligation of his contract. Many authorities are cited for this proposition, including *Potts* v. *Wallace,* 146 U. S. 689. Such action when done upon no consideration going to the benefit of the corporation would amount to an abuse of power and a breach of trust reposed in directors. But the directors have plenary power to transact the business of the corporation, and all acts done bona fide and upon sufficient consideration bind the corporation. 1 Morawetz on Private Corporations, (2nd ed.), sec. 109; *Bedford Railroad Company* v. *Bowser,* 48 Pa. St. 29, 34; 6 Fletcher on Corporations, sec. 4104.

The question then remaining on this theory of defendant is, was there a settlement by the committee which was authorized or ratified? The proof is positive that the committee undertook to make a compromise settlement with Cushaw, and apparently this contract was carried out by the officers of the corporation. Was it made bona fide, for a good consideration, based upon a bona fide claim by defendant? The record shows that it was effected, that is, entered into on December 13, 1911, when defendant paid Martin, Trustee, $125.00 in cash and gave him three notes each for the like amount, the last falling due March 9, 1912, all of which was accepted by the company and paid by defendant; and a certificate for five shares instead of ten was issued to him. This was all done while the company was solvent, and before any bankruptcy proceedings were instituted, and while the company was a going concern; and shortly afterwards the books and records of the company appear to have been adjusted to correspond with the transaction, that is, defendant's

subscription of $1000.00 was no longer carried as an asset of the company.

But was defendant's claim of non-liability bona fide? In the judgment of the committee and of the directors it would seem to have been, else they would not have compromised. The facts upon which defendant rested his claim were that the promoters of the new corporation, representing, as it soon turned out, a defunct Ohio company bearing the same name, were not able to comply with the proposition to turn over to the West Virginia corporation any of the property and assets of the old company, for which they were to accept the common stock of the new and allow to each of the subscribers of the preferred stock a certain number of shares of the common stock. This was the subject of doubt existing at the first meeting of the stockholders September 5, 1911, when it was thought a new agreement would have to be made. It seems to have been determined, however, at the adjourned meeting, that these promoters would be able to perform their agreement. But it turned out that they were not, and Cushwa then declined to pay. That there was thus presented a bona fide claim of right on the part of Cushwa, there can be little doubt. It may not have been one on which he could have sustained a defense at law, but it was a bona fide claim and was manifestly regarded as of sufficient merit to warrant a compromise. By so doing the company got from Cushwa money and notes for immediate use in the business, and he relinquished his claim to be wholly absolved from his subscription to the capital stock. That such a contract is valid and binding, when so ratified by the corporation, is well settled by the authorities. *Thomas v. Wentworth Hotel Co.,* 16 Cal. App. 403, 117 Pac. 1041, and authorities cited; *Whitaker v. Grummond,* 68 Mich. 249. The rules and principles relied on by plaintiff's counsel do not apply when there has been a bona fide compromise. 6 Fletcher on Corporations, *supra.*

Lastly, is the defendant concluded and estopped by the order of the referee in bankruptcy? He was ruled to appear and show cause, and did appear and answer, but what his answer was does not appear, for it was lost or not produced. However, no power is vested in a referee in bankruptcy to summon stockholders and

pronounce judgment against them in such proceedings. Our case of *Swing, Trustee,* v. *Taylor,* 68 W. Va. 621, cited and relied on by plaintiff's counsel, is not pertinent. That case simply holds that the judgment of insolvency, the amount of the debts of the corporation, and the amount necessary to be assessed against the stockholders, is conclusive upon the stockholders, though not present or represented otherwise than by the corporation. But the only way to collect such assessments against stockholders is by a suit in a court having jurisdiction of the subject matter and the parties upon proper pleadings and process; and in such suits the defending stockholder may interpose any reasonable defense, alleging for instance that he has already met and discharged his obligations. Collier on Bankruptcy, (11th ed.), 724.

For the foregoing reasons we are of opinion to reverse the judgment, set aside the findings of the court and award the defendant a new trial.

*Reversed and remanded.*