[S. F. No. 14732. In Bank.—April 2, 1935.]

CONNECTICUT GENERAL LIFE INSURANCE COMPANY (a Corporation), Appellant, v. CHARLES G. JOHNSON, as Treasurer, etc., Respondent.

[S. F. No. 14733. In Bank.—April 2, 1935.]

CONNECTICUT GENERAL LIFE INSURANCE COMPANY (a Corporation), Appellant, v. CHARLES G. JOHNSON, as Treasurer, etc., Respondent.

84

Raymond Benjamin and Hartley F. Peart for Appellant.

U. S. Webb, Attorney-General, and Neil Cunningham, Deputy Attorney-General, for Respondent.

PRESTON, J.—This cause is styled a consolidated action by plaintiff, a life insurance corporation, organized under the laws of the state of Connecticut, to recover from the state of California, through the treasurer thereof, certain sums alleged to be overpayments of taxes, made involuntarily under article XIII, section 14 (b) of the California Constitution, which states the rate base for the calculation of such taxes to be the total gross premiums received by the corporation during the period involved from insurance business done in this state. Defendant's demurrer to the complaint in each case was sustained without leave to amend and judgment passed for him. Plaintiff appealed.

The controversy arises over the propriety of the state's action in including within the tax base certain payments made without the state by original insurers to plaintiff at its home office, for reinsurance respecting risks assumed and policies issued and delivered in California. The case brings to the foreground the proper interpretation of the above-mentioned section of the Constitution, which, so far as here material, reads:

"Every insurance company or association doing business in this state shall annually pay to the state a tax of . . . per cent upon the amount of the gross premiums received upon its business done in this state, less return premiums and reinsurance in companies or associations authorized to do business in this state; provided, that there shall be deducted from said . . . per cent upon the gross premiums the amount of any county and municipal taxes paid by such companies on real estate owned by them in this state. This tax shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property of such companies, except county and municipal taxes on real estate, and except as otherwise in this section provided; provided, that when by the laws of any other state or country, any taxes, fines, penalties, licenses, fees, deposits of money, or of securities, or other obligations or prohibitions, are imposed on insurance companies of this state, doing business in such other state or country, or upon their agents therein, in excess of such taxes, fines, penalties, licenses, fees, deposits of money, or of securities, or other obligations or prohibitions, imposed upon insurance companies of such other state or

country, so long as such laws continue in force, the same obligations and prohibitions of whatsoever kind may be imposed by the legislature upon insurance companies of such other state or country doing business in this state.''

■ Appellant states the question involved as follows: ''Is the money paid to plaintiff in Connecticut, under an agreement made in Connecticut, for indemnifying another insurance company organized under state laws other than California as against possible loss by that other insurance company under some insurance policy it has written and issued in California, taxable against plaintiff under this provision of the Constitution as 'gross premiums received upon its business done in this state'?''

The facts alleged in one of the complaints (the other being identical save as to the year involved) show plaintiff to be a life insurance corporation regularly organized under the laws of the state of Connecticut, with home office at Hartford, and duly authorized at all times herein to transact business in California. That during the year 1927 plaintiff, acting pursuant to agreements made in 1926 without the state of California, with certain other foreign insurance companies, did, by covenants executed wholly without the state of California, indemnify said insurers against possible loss in part upon insurance risks secured, written and issued in California and for payment therefor received at its home office certain sums commonly styled ''reinsurance payments''. That for these payments plaintiff issued no policies of insurance to the insurer companies nor to the policyholders and that, respecting said reinsurance, it performed no act of any kind and transacted no business of any kind in the state of California. That the insurance commissioner of California in 1928, and for the year ending December 31, 1927, required plaintiff to report all such sums received by it for such reinsurance. That such sums so reported for said year were, in the aggregate, $398,806, and they were then added to the other items going to make up the total gross premiums for said year, making a grand total of $684,393.85, upon which the tax of 2.6 per cent was computed, the amounts so added thus increasing the amount of the tax $10,316.98 over what it would otherwise have been. The latter sum was paid under protest and a prayer for its return, with interest, was made herein by plaintiff.

Our problem, as already intimated, is to determine whether the words "gross premiums received upon its business done in this state" include sums collected by one authorized company from another for reinsurance of risks in California where such contract is executed and carried into effect wholly without the state and substantially in the manner above set out.

■ A distinction, of course, exists between a contract of insurance and a contract of reinsurance. Our Civil Code has defined the nature of the contract of reinsurance as follows: "A contract of reinsurance is one by which an insurer procures a third person to insure him against loss or liability of such original insurance (sec. 2646, Civ. Code)."

"A reinsurance is presumed to be a contract of indemnity against liability, and not merely against damage." (Sec. 2648, Civ. Code.)

"The original insured has no interest in a contract of reinsurance." (Sec. 2649, Civ. Code.)

"The ordinary contract of reinsurance operates solely between reinsured and the reinsurer, and creates no privity whatever between the reinsurer and the person originally insured. The contract of insurance and that of reinsurance remain totally distinct and unconnected, and the reinsurer is in no respect liable, either as surety or otherwise, to reinsured's policy holders; . . . " (33 Cor. Jur., sec. 735, p. 57).

■ It is clear also that ordinarily a reinsurance transaction is doing business in the state where such contract is consummated and this may or may not be in the state where the original risk was assumed. The authorities confirm this conclusion.

"Reinsurance involves no transaction or privity between the reinsurer and those originally assured. The lower courts rightly held that the making of the reinsurance compacts in New York between respondent and insurers of property in Mississippi was not the doing of business in that state." (*Morris & Co.* v. *Skandinavia Ins. Co.*, 279 U. S. 405, 408 [49 Sup. Ct. 360, 73 L. Ed. 762].)

In the case of *State* v. *Continental Ins. Co.*, 67 Ind. App. 536 [116 N. E. 929], it appeared from the special finding that the reinsurance involved was transacted at the city of Chicago, Illinois. Holding that under the terms of the stat-

ute there involved, the insurance company was not required to pay taxes to the state of Indiana on said reinsurance premiums, the court said: ''Under the terms of the statute, was it the duty of the company to pay taxes to the state of Indiana on reinsurance premiums received from other companies on account of risks located in Indiana? . . . As we construe said section 10216, the legislative intent expressed therein is that the tax shall be imposed only on business done within the territorial boundaries of the state of Indiana. The license is upon the business, and the tax is laid on 'every insurance company not organized under the laws of this state, and doing business therein'. Where a foreign company takes over from another foreign company, for the purpose of reinsurance, risks on property in this state, the transaction is, of course, between the companies, and the insurer would not be subject to the tax on the reinsurance premium received if the business was not done in this state. And this would be so whether the companies were licensed to do business in this state or not.''

The Supreme Court of Iowa arrived at the same conclusion in the case of *In re Continental Casualty Co.*, 189 Iowa, 933 [179 N. W. 185–188], a case involving taxation of ''gross premiums'' on ''business done in this state'' when the right of the state to tax ''reinsurance premiums'' was presented. The court there said: ''It is conceded that the contract of indemnity or reinsurance in question was entered into between these companies in New York, the state of their domicile, and that all the distribution of business and the pro rating of premiums pursuant thereto was done in such state. Clearly, therefore, the business was not done in Iowa.'' (See, also, *Swing* v. *Taylor & Crate*, 68 W. Va. 621 [70 S. E. 373].)

But the foregoing observations do not compel a reversal of the judgments here nor is such result compelled by the further fact that certain language employed in said provision may be accorded a broader meaning than that which it had when a part of previously existing statutes of the state.

Respondent justifies the ruling of the court below by his interpretation of the section, particularly the language: ''less . . . reinsurance in companies or associations authorized to do business in this state'', as follows: The provision,

when read as a whole, is now applicable to insurance companies of all types, domestic as well as foreign. Each company must, under section 596 of the Political Code, procure a certificate of authority to transact business in the state. The language, when fairly construed, requires each company of every type to pay a like percentage of its gross premiums collected on policies issued and delivered upon risks assumed in the state; reinsurance premiums received by a domestic corporation must of necessity be returned and a percentage thereof paid to the state. ▮ No insurer can claim an exemption upon reinsurance premiums paid to an unauthorized company. Therefore, to prevent unjust discrimination, the state may not allow the exemption for reinsurance paid to an authorized company unless and until it is in a position to claim its uniform percentage of such reinsurance premiums so as to give it in the aggregate the equivalent of the percentage on the original gross premiums paid to the insurer. In short, the transaction is not between "authorized" companies unless this result follows. Further, any other construction of the section would not only be unjust discrimination against the domestic companies but would enable foreign companies, by a simple process of reinsurance outside the state, to escape altogether such tax exaction.

We think this argument of respondent is sound and unanswerable. ▮ The intent to tax all gross premiums, or their equivalent, must be present or else the whole scheme is discriminatory and unworkable. Appellant is charged with knowledge that the state is entitled to said percentage, or to its equivalent, and also with the further knowledge that the state has this right above and in addition to any additional claims it may have under the so-called "retaliatory" rights conferred by said section. ▮ Appellant, therefore, in order to state a cause of action for a refund must of necessity show that these rights of the state have been fully satisfied. This is but another way of saying that appellant is estopped to deny that said reinsurance was consummated in the state unless and until it can show that the insurer has paid the full tax on gross premiums without exemption, including claims of the state, if any, for retaliatory taxes. This showing appellant failed to make.

 That the term "reinsurance" premiums is included in the term "gross" premiums is clear, not only because of the nature of the insurance contract but also from the context of the provision, especially that portion thereof which allows, under certain conditions, a deduction of such payments from "gross premiums" received, thereby implying their previous inclusion therein.

For the foregoing reasons the complaints fail to state a cause of action.

The judgments are affirmed.

Thompson, J., Curtis, J., Waste, C. J., Shenk, J., and Langdon, J., concurred.

Rehearing denied.