[S. F. No. 15724. In Bank.—April 26, 1937.]

CONNECTICUT GENERAL LIFE INSURANCE COM PANY (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Respondent.

[S. F. No. 15725. In Bank.—April 26, 1937.]

CONNECTICUT GENERAL LIFE INSURANCE COM-PANY (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Respondent.

Raymond Benjamin and Hartley F. Peart for Appellant.

U. S. Webb, Attorney-General, Neil Cunningham, Deputy Attorney-General, and James J. Arditto for Respondent.

CURTIS, J.—These two actions, while appealed separately, have been argued together, and as they present the same identical question, they may and will be considered in one opinion. The only difference in the two actions, is that in action S. F. No. 15724, the plaintiff seeks to recover taxes paid for the calendar year 1930, while in action S. F. No. 15725 recovery is sought for the year 1931. These actions differ in no material respect from the two actons bearing the same title and reported in 3 Cal. (2d) 83 [43 Pac. (2d) 278], except as to the years during which the taxes involved accrued. In our decision in those actions we held that the taxes paid by plaintiff which it sought to recover in those actions, were legally levied and collected and the plaintiff was not entitled to recover any portion of the taxes so paid by it. As to all the questions involved in those appeals which were discussed and decided therein, we adhere to the conclusions reached by us in that decision.

The present actions were pending at the time the former cases were decided. On the going down of the *remittitur* in the former appeals, the plaintiff amended its complaints in the two instant actions by expressly pleading the Fourteenth Amendment to the Constitution of the United States and alleging that the assessment and levy of a tax against plain-

tiff on the basis of its reinsurance business transacted during the two years covered by the complaints in these actions violated the provisions of this section of the federal Constitution.

There are set forth in said amended complaints, three grounds upon which the plaintiff relies in support of its contention that the assessment and levy of said tax against it violated the Fourteenth Amendment of the United States Constitution. These grounds are now relied upon by the plaintiff in support of its appeals herein.

It is first contended that the state board of equalization in computing the tax upon the reinsurance business of plaintiff levied a tax on account of business not done in the state of California and on contracts executed wholly and performed entirely without this state. This contention was the basis of the plaintiff's argument upon the former appeals, and it was decided adversely to plaintiff. We see no good reason for restating our position upon this question as our former decision fully answers the present contention of plaintiff.

It is next contended that the computation of said tax upon the basis of reinsurance done by plaintiff is violative of said constitutional section, and is the taking of plaintiff's property without due process of law in that said tax is levied against plaintiff on account of a transaction and privilege not granted to plaintiff by the state of California and not exercised by the plaintiff within this state. Plaintiff alleges that the plaintiff during the years for which said tax was levied held a legal and valid certificate of authority issued by the officials of this state authorizing it to do and transact the business of life and accident and health insurance within this state. It further alleges that neither of these certificates of authority authorized plaintiff to transact in California any other type of insurance except the three types above mentioned, all of which are recognized as types of insurance under section 594 of the Political Code of the state of California.

This section of the code was amended in 1933, and in 1935 the Insurance Code was adopted, which superseded section 594 of the Political Code classifying insurance business. As these amendments were subsequent to the years during which the taxes herein involved accrued, the present actions are governed by the provisions of section 594 of the Political

Code prior to its amendment in 1933. Neither the amendment of 1933 nor the provisions of the Insurance Code change the law in any material respect, in so far as it applies to any point raised in these actions, from what it was prior to the year 1933. Section 594 of the Political Code provides for some twenty different classes of insurance for which certificates of authority may be issued in this state. No mention is made of reinsurance in said section as a separate class of insurance which may be carried on in this state. This does not mean that the business of reinsurance may not be carried on in this state. It may mean, however, that the business of reinsurance is included in the respective classes of insurance enumerated in said section of the code. That is to say, that a certificate of authority to engage in the business of fire insurance includes the authority to engage in the business of fire reinsurance.

"Reinsurance contracts as a general rule, involve no legal principles essentially different from those applicable to contracts generally, nor does the contract necessarily differ in form from original insurance. And reinsurance was a valid contract at common law and . . . has generally been regarded as a legitimate and valid contract; reinsurance now being generally practiced." (Cyclopedia of Insurance Law, Couch, vol. 1, p. 65, sec. 44.) Again, the same author makes the following statement: "An insurance company empowered 'to make contracts of insurance' or 'all kinds of insurance against losses by fire', may make a contract of reinsurance. . . ." (Vol. 8, p. 7393, sec. 2258.) We find the identical statement in Joyce on Insurance, volume 1, page 345, section 115.

The case of *New York Bowery Fire Ins. Co.* v. *New York Fire Ins. Co. of New York,* 17 Wend. (N. Y.) 359, seems to be the foundation for the statement quoted above from the works of the two well-known authors. In that case we find the question discussed as follows: "It is objected that these companies had no authority under their charters of incorporation to enter into the contract of re-assurance. By the 6th section of the Act incorporating the plaintiffs, Laws of 1832, p. 292, they have power 'to make contracts of insurance against loss by fire of any houses or buildings whatsoever, and of any goods, chattels or personal estate whatsoever.' By the 6th section of the Act incorporating the Bowery Co. Laws of 1833, p. 296, they have power 'to make all kinds

of insurance against losses by fire, of any houses and buildings whatsoever; and also upon all goods, wares' and merchandise whatsoever'. Re-assurance is but a modification of the contract of insurance, and is, I think, clearly included in the power of the plaintiffs, 'to make contracts of insurance', and of the defendants 'to make all kinds of insurance' against losses by fire. . . . ''

■ Section 594 of the Political Code enumerates all the different classes of insurance authorized to be transacted in this state. It does not mention reinsurance. If reinsurance business is not included within one or more of the different classes of insurance mentioned in this code section, then there is no law in this state governing that class of insurance, and it might follow that that type of insurance business is not permitted in this state. In the adoption of the Insurance Code in 1935, the insurance law of the state was rewritten, and in many instances material changes were made therein. Yet in this latest legislative enactment on the subject, we find no mention made of reinsurance as a separate and distinct type from ordinary insurance although other references are made therein to the business of reinsurance. In fact, the Insurance Code follows *verbatim* the classification of the different classes of insurance enumerated in section 594 of the Political Code, prior to its repeal. It is hardly reasonable that the commission which framed the Insurance Code, and the legislature which enacted the bill proposed by the commission into law, as well as section 594 of the Political Code, and its amendment, intended to leave the business of reinsurance without regulation in this state. The only reasonable conclusion to be drawn from their actions, as well as from the authorities cited above, is that the business of reinsurance is but a modification of ordinary insurance and is included in a certificate authorizing an insurance company to carry on any of the general lines of insurance mentioned in the statute. The plaintiff, therefore, cannot legally claim that during the times mentioned in the amended complaints in these actions the certificates of authority issued to it to transact the business of life, accident and health insurance, did not authorize it to do a reinsurance business in these three classes of insurance. ■ It is true that plaintiff has alleged that it had no certificate of authority to transact reinsurance business in this state. While the demurrers admit all allegations of fact in the amended com-

plaints, they do not admit the truth of conclusions of law. The allegation as to the want of authority of the plaintiff to do a reinsurance business in this state comes within this latter class of allegations and is not admitted by demurrer. The section of the Constitution of this state under which the tax was levied against the plaintiff is not therefore violative of the provisions of the Fourteenth Amendment of the Federal Constitution which prohibits the taking of property without due process of law in that it permits the levying of a tax against plaintiff on account of a franchise not granted to plaintiff or exercised by it in this state. As we have seen, plaintiff has enjoyed and exercised this franchise during the entire time involved in these actions.

Plaintiff further claims that this section of the federal Constitution is violated in that the tax officials of this state in computing the tax against the plaintiff, included its reinsurance business, and thereby denied to plaintiff the equal protection of the law. Plaintiff bases this claim upon its statement that under the law in force during the years mentioned, the rate of taxation against all persons and companies doing an insurance business was fixed at 2.6 per cent of their gross premiums, and that by compelling plaintiff to pay a tax of 2.6 per cent based upon gross premiums received by it, not only from its general insurance business but also upon its reinsurance business, such tax amounted to more than 5.6 per cent of its gross premiums received from its general insurance business. Therefore, plaintiff claims that other insurance companies which transact business in this state but do not accept reinsurance business are only required to pay a tax equal to 2.6 per cent of their gross premiums while plaintiff is required to pay a tax equal to 5.6 per cent of its gross premiums. To state this proposition is to show its fallacy. Plaintiff is only required to pay a tax equal to 2.6 per cent of its gross premiums received from its entire business which, of course, includes its reinsurance business. All other companies accepting reinsurance business pay at the same rate, and companies which do not accept reinsurance pay the same tax based upon the business transacted by them. There is, therefore, no discrimination against the plaintiff as it is taxed at the same rate at which others engaged in a similar business are taxed.

■ Article XIII, section 14 (b) of the Constitution of this state permits a deduction of reinsurance premiums from the amount of the gross premiums received by an insurance company doing business in this state, for the purpose of computing the amount of taxes to be paid by said company. The evident purpose and intent of this provision of the Constitution are to avoid double taxation without any loss of revenue to the state. This deduction can only be made when the company which reinsures is "authorized to do business in this state". We have shown that the plaintiff was during the years herein involved, authorized to do not only a life, accident and health insurance business, but a reinsurance business in this state. Plaintiff's business in reinsurance clearly came within the terms of the constitutional section which permitted a deduction from gross premiums of premiums paid for reinsurance. Plaintiff undoubtedly received a benefit from this deduction as the companies whose risks it has reinsured, being relieved of taxes to the extent of the business transacted with plaintiff, could pay to plaintiff a higher premium than they could have paid had this deduction not been made. On the other hand, if it should be held that plaintiff is not liable for this tax, then no deduction should be made to the companies with which the plaintiff is doing a reinsurance business, with the result that these companies would not be able to pay to the plaintiff the rates which it is now receiving. In such a case, it would be necessary for the plaintiff either to refuse this business or to reduce its premiums if it expected to hold this reinsurance business. We, however, are of the opinion that, as the plaintiff was authorized to do reinsurance business in this state during the entire time at which the tax against it was levied, the state officials in levying the tax for those years correctly deducted from the gross premiums of the companies reinsuring with the plaintiff, the premiums paid to plaintiff, and that the plaintiff was liable for the tax computed upon its entire business transacted during those years, including its reinsurance of risks to property situated in this state.

The judgments are affirmed.

Edmonds, J., Shenk, J., Thompson, J., and Langdon, J., concurred.