LITTLE SWITZERLAND BREWING COMPANY, *a corporation*

*v.*

CHARLES E. OXLEY

(No. 13255)

AND

LITTLE SWITZERLAND BREWING COMPANY, *a corporation*

*v.*

FRED J. ELLISON

(No. 13259)

Submitted May 9, 1973.       Decided June 26, 1973.

*Marshall & St. Clair, James W. St. Clair,* for appellant.

*Barrett & Chafin, Lafe C. Chafin,* for appellees.

BERRY, PRESIDENT:

The appellant, Little Switzerland Brewing Company, appeals from a final order of the Circuit Court of Cabell County entered September 8, 1971, and a final order of the Circuit Court of Mercer County entered November 30, 1971, wherein appellees Charles E. Oxley and Fred J. Ellison were granted summary judgments. The appellant contends that the trial courts erred in not holding Oxley and Ellison liable for stock subscription agreements wherein they had agreed to purchase 5,000 shares of Little Switzerland's common stock at a price of $10 per share. This Court granted Little Switzerland's appeal in the Oxley case on September 25, 1972, and granted Little

Switzerland's appeal in the Ellison case on October 2, 1972. The cases were consolidated by agreement of the parties and submitted to this Court for decision on May 8, 1973, upon the arguments and briefs on behalf of the respective parties. The two cases are factually identical and will be disposed of together in this opinion.

Little Switzerland Brewing Company was incorporated and a charter was issued by the Secretary of State on January 28, 1968. The company had authorized capital stock of $200,000 consisting of 2,000,000 shares at the par value of ten cents a share. On February 18, 1968 Fred Ellison and Charles E. Oxley were made directors of the company after they purchased 5,000 shares at $5 per share. On the same date the company entered into an agreement with Valanco, Inc. to underwrite the sale of 100,000 shares of Little Switzerland common stock at $10 per share with $1.50 of the $10 going to Valanco, Inc. as its underwriting commission.

A prospectus was issued dated April 26, 1968. On June 23, 1968 all of the directors signed an agreement with the Securities Commissioner of the State of West Virginia that they would not trade, sell or in any way dispose of their shares in the company until the registration of the stock with the Securities Commissioner had expired or had been cancelled.

Little Switzerland contends that 275 citizens throughout the State of West Virginia subscribed for shares in the company prior to September 22, 1968. On September 25, 1968 Charles E. Oxley and Fred J. Ellison signed stock subscription agreements to purchase 5,000 shares of stock at $10 a share. At the bottom of each agreement were three boxes, one of which was to be marked depending on whether the subscriber was tendering cash, check or a money order with the agreement. Oxley and Ellison did not mark any of the boxes but wrote the word "Note" in a blank space which was to be filled in with the amount of money that was being tendered with the subscription. The "Note" that accompanied the stock

subscription agreement was titled "Noninterest Bearing — Nonobligatory Note" and merely stated that Oxley and Ellison would pay "at their discretion" $50,000 to Little Switzerland Brewing Company.

Little Switzerland contends Miss Cook, the bookkeeper, and Valanco, Inc. also executed similar notes for the subscription of shares at about this same time, and that these four subscriptions totaled 81,652 shares of the authorized sale of 100,000 shares.

On October 2, 1968 the President of Little Switzerland notified the Commissioner of Securities that the public offering had been completed, and on October 10, 1968 the Commissioner approved over-the-counter trading of the company stock.

On March 24, 1970 eight of the ten directors of the company met and passed a resolution 7 to 1 to cancel the stock subscription agreements of Ellison, Oxley, Cook, and Valanco, Inc. Mr. Ellison was not present at that meeting. On March 26, 1970 an involuntary petition for bankruptcy was filed against Little Switzerland Brewing Company in the United States District Court for the Southern District of West Virginia.

The bankruptcy proceeding was converted to a plan of arrangement formulated by Little Switzerland, agreed to by the creditors, and approved by the referee in bankruptcy after which Little Switzerland instituted these two proceedings in the Circuit Courts of Cabell and Mercer Counties on behalf of the creditors of the company, in order to collect the money owing on the stock subscription agreements of Oxley and Ellison. In each case, both parties moved for summary judgment and the defendant in each case was granted summary judgment. The Circuit Court of Cabell County held that since the "note" was specifically mentioned in the subscription agreement both documents should be considered together, and since there was no obligation on the part of the defendant on the note he had a mere option to buy the stock. The appellees, Oxley and Ellison, also contend

that even if the subscription agreements were binding, the board of directors had the power to cancel them, which they did on March 24, 1970. Little Switzerland, on the other hand, contends that Oxley and Ellison are liable for the stock subscriptions and cannot disavow the agreement by contending they were merely entering into a stock option agreement.

Two questions are presented on this appeal for the decision of this Court: (1) Should the defendants be allowed to escape liability under the provisions of the stock subscription agreements signed by them by tendering a non-interest bearing non-obligatory note as payment for said subscriptions? (2) Did the board of directors have the right and power to release the defendants from liability under the subscription agreements?

It is the contention of the appellant Little Switzerland that the trial courts erred (1) in granting the appellees' motions for summary judgment in that it failed to consider the surrounding circumstances of the stock subscription agreements with the non-interest bearing non-obligatory notes signed by the appellees; (2) in failing to rule that the appellees violated their fiduciary duties to the other shareholders and to the creditors of the corporation, and that the note in question had no effect on the validity of the subscriptions; (3) in not holding that the appellees were estopped to deny liability on their part because of their actions and conduct and that they were bound by the subscription agreements signed by them; (4) in failing to apply Code, 31-1-35, which specifically covers the situation involved in the case at bar and places liability on the appellees.

This action was instituted for the benefit of the creditors of the Little Switzerland Brewing Company pursuant to an order of the bankruptcy court in order to collect the appellees' money for their stock subscriptions. The authority for such action is contained in Code, 31-1-35, in the following language:

"Every stockholder of every corporation of this State shall be liable for the benefit of the creditors of such corporation for the amount of his subscription to the stock of such corporation, less the amount which he shall already have paid thereon, until he shall have paid such subscription in full, according to the terms thereof, * * * and, in the event of the insolvency of the corporation, all such liabilities of the stockholders shall be considered assets of the corporation and may be enforced by the receiver, trustee or other person winding up the affairs of the corporation, notwithstanding any release, agreement or arrangement, short of actual payment, which may have been made between the corporation and such stockholders."

It appears that the stock subscriptions of the appellees were used and counted as a part of the required number of shares to be purchased at public offering in order to have the Commissioner of Securities approve over-the-counter trading of the Little Switzerland Brewing Company's stock. It is the appellees' contention that the stock subscription agreements signed by them are not valid because the non-obligatory notes were a part of the stock subscription agreements and the notes did not obligate them to pay for the stock in question although the subscription agreements themselves said it was paid for at the time it was signed. This contention is without merit because it was held by this Court in the case of *Pittsburg, Wheeling & Kentucky R.R. Co. v. Applegate & Son,* 21 W.Va. 172, that a subscriber to the stock of a corporation cannot escape liability to pay for his subscription on the grounds that he did not pay the sum required to be paid by the statute at the time he subscribed.

It should be noted that the appellees in the instant case were not only stockholders but were also directors of the company and it is their contention that the stock subscription agreements were only options to buy stock. However, the agreements were used to assure the Commissioner of Securities that the public offering had been fully subscribed and to free the other stock of the

Little Switzerland Brewing Company for over-the-counter trading. The contention of the appellees would appear to be that the subscription agreements in question were merely fictitious or colorable subscriptions; but if this were done to induce others to subscribe and there was an understanding that there was to be no liability on the part of the appellees, the subscriptions are nevertheless just as binding on the subscribers as if they were made in good faith. 4 M.J., *Corporations,* § 78. This principle is discussed in W. FLETCHER, PRIVATE CORPORATIONS, § 1965, (perm. ed.), wherein it appears:

> "One who knowingly permits the corporation to hold him out as a stockholder for the purpose of inducing others to subscribe and to make contracts with the company, is estopped, as against creditors, to set up that his contract was not a subscription, but was merely an option to take stock which he never exercised, and that he was induced to make it by fraud."

It has been held that a corporation has no authority to accept subscriptions to its capital stock upon special terms, where the terms are such as to constitute a fraud upon other subscribers, or upon persons who become creditors of the corporation, and the invalidity of such terms or conditions will not release the subscriber from liability upon his subscription. *Burke v. Smith,* 16 Wall. 390, 21 L. Ed. 361; *Morrow v. Nashville Iron, Steel & Charcoal Co.,* 87 Tenn. 262, 10 S.W. 495.

The contention of the appellees that there is no liability on their part for the stock subscriptions involved because of the non-obligatory note is clearly shown to be without merit in the following statement contained in 18 AM. JUR. 2d, *Corporations,* § 310:

> "An extrinsic or collateral agreement between a particular subscriber to corporate stock and the corporation or its agents or promoters, whereby the subscriber is not to be held liable on his subscription contract, or is to be liable in part only, is invalid and void, since it constitutes a fraud upon creditors, other subscribers, and

stockholders of the corporation. The liability of a subscriber for corporate stock, based upon the contract of subscription, is enforceable regardless of such an agreement. Thus, a secret agreement with the company that a stock subscription of the defendant shall be merely colorable is a fraud upon other subscribers for stock, and is not a defense to an action on the subscription. The written subscription will be enforced without regard to such an agreement. These principles are founded partly upon the theory that a subscription to the stock of a corporation, which stock is open for general subscription, is an undertaking not only between each subscriber and the company, but between him and all other subscribers to the common enterprise; and each subscriber has the right to suppose that the subscription of every other subscriber is a bona fide undertaking according to its terms."

See Anno., 81 A.L.R. 198, 202.

The authorities appear to be uniform in holding that a subscriber to corporate stock based upon the subscription is liable for such subscription of stock regardless of any extrinsic agreement between the subscriber and the corporation. Anno., 81 A.L.R. 198, 205; *Jones v. Dodge,* 97 Ark. 248, 133 S.W. 828; *Morrill v. Mastin,* 23 N.M. 563, 170 P. 45.

The Supreme Court of the United States has consistently held since the case of *Sawyer v. Hoag,* 17 Wall. 610, that the capital stock of an insolvent corporation is a trust fund for the payment of its debts; that the law implies a promise by the subscribers of stock who did not pay for it to make such payment when demanded by the creditors of the corporation; and that any extrinsic agreement limiting the subscriber's liability therefor is void against creditors. *Potts v. Wallace,* 146 U.S. 689, 13 S. Ct. 196, 36 L. Ed. 1135; *Handley v. Stutz,* 139 U.S. 417, 11 S. Ct. 530, 35 L. Ed. 227; *Hawkins v. Glenn,* 131 U.S. 319, 9 S. Ct. 739, 33 L. Ed. 184.

It has been repeatedly held by this Court that the officers and directors of an insolvent corporation are

trustees for the creditors. *Arnold v. Knapp,* 75 W.Va. 804, 84 S.E. 895; *Kahle v. Oil Co.,* 51 W.Va. 313, 41 S.E. 233; *Ravenswood S. & G. Ry. Co. v. Woodyard,* 46 W.Va. 558, 33 S.E. 285; *Lamb v. Pannell,* 28 W.Va. 663.

It is clear from the authorities that the appellees in the instant case are liable for their stock subscriptions.

The answer to the second question involved in the case presented here is that the directors of the corporation did not have the authority in any event to release the appellees from liability on their stock subscription agreements. In the first place the directors of a solvent corporation have no authority to release any stockholder from liability on stock subscription agreements unless authorized by the stockholders of the corporation. *Martin v. Cushwa,* 86 W.Va. 615, 104 S.E. 97. Then, too, where a corporation is insolvent such action by the corporation is prohibited by statute. Code, 31-1-35. This statute not only provides that the appellees, as stockholders of the Little Switzerland Brewing Company, shall be liable for the benefit of the creditors of Little Switzerland for the amount of their stock subscriptions, but also that in the event of insolvency of Little Switzerland all such liability of the stockholders shall be considered as assets of the corporation and may be enforced by the proper person notwithstanding any release agreement or arrangement which may have been made between the corporation and the stockholders.

For the reasons stated herein the judgments of the Circuit Courts of Cabell and Mercer Counties are reversed and the cases are remanded with directions to dispose of them in conformity with the principles contained in this opinion.

*Judgments reversed;*
*remanded with directions.*